IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**RECEIVED WILLIAMSPORT**

3: CV 18-1221   JUN 15 2018

**FILED WILLIAMSPORT**

JUN 15 2018

PER_____

**DEPUTY CLERK**

| | | |
|---|---|---|
| Vladimir Sonin, pro se, | : | Civil No. |
| Plaintiff , | : | |
| | : | |
| v. | : | |
| | : | |
| J. Potope, HSA, individually | : | Jury Trial Demanded |
| and in his official capacity, | : | |
| R. Parkyn, AHSA, individually | : | |
| and in his official capacity, | : | |
| Dr. Elizabeth Stahl, individually | : | Under |
| and in her official capacity, | : | Bivens v. Six unknown |
| M. Nicholas, Unit Manager, | : | Named Agents Of Federal |
| individually and in his official | : | Bureau Of Narcotics |
| capacity, M. Potoro, Case Manager, | : | 29 L.Ed.2d 619 (1971) |
| individually and in his official | : | |
| capacity, Jason McKee, Case | : | |
| Manager, individually and in his | : | |
| official capacity, James Hill, | : | |
| Correctional Counselor, | : | |
| individually and in his official | : | Complaint |
| capacity, B. Zalno. PA, | : | |
| individually and in her official | : | |
| capacity, J. Hemphill, PA, | : | |
| individually and in his official | : | |
| capacity, Micki Powanda, PA, | : | |
| individually and in her official | : | |

-1-

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

capacity, FNU Yost, Correctional       :

Officer, individually and in his       :

official capacity, S. Driebelbies, :

RN, individually and in her            :

official capacity, J. Freynik,         :

EMT, individually and in his           :

official capacity, FNU Atkins,         :

Correctional Officer,                  :

individually and in his official       :

capacity, FNU Martin,                  :

Correctional Officer,                  :

individually and in his official       :

capacity, Lieutenant Reedy,            :

individually and in his official       :

capacity, FNU Baily, Correctional      :

Officer, individually and in his       :

official capacity, JOHN DOE # 1        :

Correctional Officer,                  :

individually and in his official       :

capacity, JOHN DOE # 2,                :

Correctional Officer,                  :

individually and in his official       :

capacity, United States of             :

America, Defendants.                   :

COMPLAINT

I. Parties In This Complaint.

A. Plaintiff:

1.) Plaintiff was living as a United States Citizen, with his wife and four (4) children, in Milwaukee, Wisconsin.  Plaintiff was arrested there by Federal agents, which resulted in his present incarceration.  Plaintiff was at all times, during the alleged events, housed at FCI Allenwood Medium, in White Deer, Pennsylvania.

B. Defendants:

2.) Defendant, J. Potope, is the Health Services Administrator here at Allenwood and is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to the Allenwood Complex. This Complaint can be served upon him at the following address:  USP Allenwood, P. O. Box 3500, White Deer, Pennsylvania 17887.

3.) Defendant, R. Parkyn, is the Assistant Health Services Administrator here at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons.  At the time in question, he was assigned to FCI Allenwood Medium.  This Complaint can be served upon him at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

4.) Defendant, Dr. Elizabete Stahl, is the Medical Director at the Allenwood Complex and is employed by the Federal Bureau of Prisons. At the time in question, she was assigned to the Allenwood Complex. This Complaint can be served upon her at the following address:  USP Allenwood, P. O. Box  3500, White Deer, Pennsylvania 17887.

5.) Defendant, M. Nicholas, is the Unit Manager of Housing Units 1 and 2 at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons.  At the time in question, he was assigned to FCI Allenwood Medium, and in particular, managing Unit 1A.  This Complaint can be served upon him at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

6.) Defendant, M. Potoro, is the Case Manager of Unit 2B at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to FCI Allenwood Medium as a Case Manager, and more particularly, was assigned as the Block Officer in Unit 1A, during the second shift the day of the incident.  This Complaint can be served upon him at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

7.) Defendant, Jason McKee, is the Case Manager of Unit 1A at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to FCI Allenwood Medium as a Case Manager of Housing Unit 1A.  He was and is Plaintiff's Case Manager.  This Complaint can be served upon him at the following address: FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania

17887.

8.) Defendant, James Hill, was the Correctional Counselor of Unit 1A, until his recent retirement and was employed by the Federal Bureau of Prisons.  At the time in question, he was assigned to FCI Allenwood Medium as the Correctional Counselor of Housing Unit 1A. He was Plaintiff's Correctional Counselor, until his very recent retirement.  Plaintiff is confident that the Federal Bureau of Prisons can provide an address where this Complaint can be served upon this defendant.

9.) Defendant, Beth Zalno, PA, is a Physician's Assistant at the Health Services Department at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons.  At the time in question, she was assigned to FCI Allenwood Medium as a Physician's Assistant.  This Complaint can be served upon her at the following address:  FCI Allenwood Medium. P. O. Box 2500, White Deer, Pennsylvania 17887.

10.) Defendant, J. Hemphill, PA, is a Physician's Assistant at the Health Services Department at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons.  At the time in question, he was assigned to FCI Allenwood Medium as a Physician's Assistant.  This Complaint can be served upon him at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

11.) Defendant, Micki Powanda, PA, is a Physician's Assistant at the Health Services Department at FCI Allenwood Medium and is employed

by the Federal Bureau of Prisons.  At the time in question, she was assigned to FCI Allenwood Medium as a Physician's Assistant.  This Complaint can be served upon her at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

12.) The Defendant, FNU Yost, Correctional Officer, is employed by the Federal Bureau of Prisons.  At the time in question, he was assigned to FCI Allenwood Medium as a Correctional Officer.  This Complaint can be served upon him at the following address:  FCI Allenwood Medium, P. O. Box 2500, white Deer, Pennsylvania 17887.

13.) Defendant S. Driebelbies, RN, is a Registered Nurse in the Health Services Department at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons.  At the time in question, she was assigned to the Health Services Department at FCI Allenwood Medium as a nurse. This Complaint can be served upon her at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

14.) Defendant, J. Freynik, EMT, is an Emergency Medical Technician, in the Health Services Department at FCI Allenwood Medium and is employed by the Federal Bureau of Prisons.  At the time in question, he was assigned to FCI Allenwood Medium as an EMT.  This Complaint can be served upon him at the following address:  FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

15.) Defendant, FNU Atkins, Correctional Officer, is employed by the Federal Bureau of Prisons.  At the time in question, he was

assigned to FCI Allenwood Medium as a Correctional Officer. This Complaint can be served upon him at the following address: FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

16.) Defendant, FNU Martin, Correctional Officer, is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to FCI Allenwood Medium as a Correctional Officer. This Complaint can be served upon him at the following address: FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

17.) Defendant, Lieutenant Reedy, is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to FCI Allenwood Medium as a Lieutenant, and more particularly, was assigned as the Lieutenant in the Special Housing Unit as the inmate property room Lieutenant. This Complaint can be served upon him at the following address: FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

18.) Defendant, FNU Baily, Correctional Officer, is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to FCI Allenwood Medium as a Correctional Officer. This Complaint can be served upon him at the following address: FCI Allenwood Medium, P. O. Box 2500, White Deer, Pennsylvania 17887.

19.) Defendant, JOHN DOE # 1, Correctional Officer, is employed by the Federal Bureau of Prisons. At the time in question, he was assigned to FCI Allenwood Medium as a Correctional Officer, and more

particularly was assigned to the  first shift in the Special Housing
Unit (Hole), during May 18, 2017 through July 13, 2017.  This Complaint
can be served upon him at the following address: FCI Allenwood Medium,
P. O. Box 2500, White Deer, Pennsylvania 17887.


20.) Defendant, JOHN DOE # 2, Correctional Officer, is employed
by the Federal Bureau of Prisons.  At the time in question, he was
assigned to FCI Allenwood Medium as a Correctional Officer, and more
particularly was assigned to the first shift in the Special Housing
Unit (Hole), during May 18, 2017 through July 13, 2017.  This Complaint
can be served upon him at the following address: FCI Allenwood Medium,
P. O. Box 2500, White Deer, Pennsylvania 17887.


21.) Defendant, United States of America, is the United States
Government.

## II.  Basis For Jurisdiction.

Federal Question Jurisdiction.


22.) 28 U.S.C. §1331 states that, "[t]he District Courts shall
have original jurisdiction of all civil actions arising under the
Constitution, Laws, or Treaties of the United States."


Diversity Jurisdiction.


23.) 28 U.S.C. §1332(a) states that, "[t]he District Courts

shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states...."

24.) Plaintiff believes his action provides this Honorable Court with both Federal Question Jurisdiction and Diversity Jurisdiction.

## III. Venue.

25.) It is important to note that if the action is based on Diversity **and** a Federal Question, the venue provision for a Federal Question case applies. 28 U.S.C. §1391(b) provides generally for venue in (1) a Judicial District where any Defendant resides, if all Defendants reside in the same State, (2) a Judicial District in which a substantial part of the events giving rise to the claim occurred, or (3) a Judicial District in which any Defendant may be found, if there is no District in which the action may otherwise be brought.

26.) All the Defendants in this action reside in the Middle District of Pennsylvania, all the events giving rise to the claim occurred in the Middle District of Pennsylvania, and all the Defendants may be found in the Middle District of Pennsylvania.

## IV. Statement Of Claim.

27.) Plaintiff is a 50-year-old male who, prior to the events alleged herein, was of reasonably sound mind and body. Prior to these

events, Plaintiff suffered no mental illness, or prior physical
maladies of any kind, save a lone episode of potassium deficiency.

28.)  Following sentencing in Federal Court, Plaintiff was granted
permission to self-surrender to FCI Milan, Michigan.  Plaintiff was
later transferred to FCI Allenwood Medium, in White Deer, Pennsylvania.
Upon arrival at FCI Allenwood Medium, Plaintiff was assigned to Housing
Unit 1A and placed in Cell 229.  The particular bed Plaintiff was
assigned to had previously been occupied by a gang member who had been
sent to the "Hole."  When that particular gang member was released
from the hole, he informed Plaintiff that he had to move so that the
gang member could have <u>his</u> cell back.  Plaintiff was new to prison
life and did not know the ins and outs.  The gang member who wanted
his cell back conspired with another gang member to allow Plaintiff to
move into his cell, with the aim of extorting Plaintiff.  And so,
Plaintiff was moved into another cell with another gang member without
regard to whether Plaintiff wanted to make the move or not.

29.) After Plaintiff was moved to Cell 130, he soon discovered
that his new cellmate was only interested in extorting him and trying
to intimidate him.  The gang members are all known to BOP staff,
therefore, this particular inmate was known by staff and known to
constantly be in trouble.  Inmate, Arnold Perez, Reg. No. 23576-380,
started by informing Plaintiff that he (Perez) didn't care if Plaintiff
had 20 Bottom bunk passes, he wasn't about to give up the bottom bunk.
From the outset, inmate Perez set about to intimidate Plaintiff at
every turn.  Each day inmate Perez presented a new threat or another

-10-

offer to extort Plaintiff. Inmate Perez warned Plaintiff not to inform staff of his threats, nevertheless, Plaintiff, knowing he had a real problem, went to see Correctional Counselor, James Hill to seek his help. After explaining the predicament he was in, Plaintiff was told to try and work it out with his new cellmate.

30.) Inmate Perez told Plaintiff that he would sell the bottom bunk to Plaintiff for x amount of money. When Plaintiff went to use one of the two chairs in the cell, inmate Perez informed Plaintiff that both of the chairs were his. Inmate Perez later offered to sell Plaintiff one of the chairs. The threats and attempts of extortion increased by the hour. Plaintiff was in fear for his life. It should be noted that inmate Perez had a history of assaults on other inmates, as well as a multitude of other prison infractions.

31.) Inmate Perez threatened Plaintiff with bodily injury if he reported any of his threats or extortion attempts to prison officials. Once again, Plaintiff spoke to Counselor Hill about the excalating problem with Perez. Counselor Hill relied, "Let me see what I can do, but, in the mean time, try to work it out with Perez. Counselor Hill was aware of a dangerous situation, but failed to act or take it seriously.

32.) The situation was esculating on an hourly basis and Plaintiff was becoming frantic. He decided to approach Counselor Hill again, only to learn that Counselor Hill wasn't in that day. Plaintiff then decided to contact the Case Manager, Jason McKee, hoping for some

measure of help.  Case Manager McKee informed Plaintiff that he needed
to speak to Counselor Hill about the problem and that Mr. Hill wasn't
in that particular day.  Plaintiff tried to stress just how worried
he was about the esculating situation, but Mr. McKee acted like it
wasn't as big a deal as Plaintiff was making it out to be.  Finally,
Case Manager McKee told Plaintiff to try and work it out with inmate
Perez and to see Counselor Hill again when he returned to work.

    33.) Inmate Perez continued with his threats and efforts to
extort Plaintiff, bragging that he was a gang member and that prison
was his "career."  Inmate Perez threatened Plaintiff once again not
to even think about reporting him to prison officials.  Inmate Perez
was in the habit of smoking the narcotic known as K-2, which would
make him appear to lose his mind.  It was at these times that inmate
Perez would increase his verbal assaults and threats on Plaintiff's
life.  On one particular occasion, after smoking K-2, inmate Perez
told Plaintiff that, "I am tired of this prison and am looking for
any way, or excuse to be moved out."

    34.)  It was during one of these particular times that Plaintiff
told inmate Perez to give Plaintiff some time to think about making
payments to inmate Perez.  This was an attempt by Plaintiff to buy a
little time, in the hope that Plaintiff might yet find some help from
one or more staff member.  On this particular occasion, when Plaintiff
could not find Counselor Hill, or Case Manager McKee, he decided to
go to mainline.  At mainline, Plaintiff spoke to the Unit Manager,
M. Nicholas.  He tried to explain just how serious he thought the

situation was, but, either Plaintiff failed to adequately explain, or Mr. Nicholas thought the problem was Mr. Hill's and not his, or perhaps he was just too busy.

35.) At this point, it should be noted that Plaintiff has a very poor grasp of the English language, making it extremely difficult for him to comprehend, nevertheless, he believes he adequately explained the problem he was having with inmate Perez and in asking for solutions.

36.) On May 18, 2017, inmate Perez smoked K-2, and this continuing habit was making him desperate for money.  On this day, inmate Perez was exceedingly surly, threatening Plaintiff and demanding that Plaintiff pay rent for living in the cell.  Plaintiff decided to appeal to Counselor Hill one last time, but when Counselor Hill was not to be found, Plaintiff decided to go to the Recreation yard to escape the abuse of inmate Perez and to avoid a conflict.

37.) At Approximately 3:00 p.m., Plaintiff returned from the Recreation yard and when he tried to enter his cell, he saw that the window on the cell door was covered from the inside with a piece of cardboard, which is used to indicate that the toilet is in use.  The door window stayed covered until 3:45 p.m. when the 4:00 p.m. standing Count was announced over the PA system.  Upon this daily announcement, all inmates are to return to their cells to be counted.  Finally, Perez removed the cardboard and Plaintiff entered the cell for count. Upon entering the cell, Plaintiff smelled a strong acrid smell of

-13-

smoke and saw inmate Perez holding onto the top bunk to steady himself.
Plaintiff asked him if he was alright, to which Perez replied, "You
just got it!"  As the Unit Officer locked the cell door, Plaintiff
walked to the sink and turned his head to the right to await the count.
Unprovoked, unexpected, and without warning, inmate Perez started to
hit Plaintiff on the left side of the head with a sock and a steel
combination lock attached.  Inmate Perez seemed surprised that Plaintiff
did not go down or lose conscienceness, and therefore continued to hit
Plaintiff in the head.  Plaintiff put his hands up in an effort to
try to cover his head and began to scream at Perez to stop hitting
him.

38.)  Perez ignored Plaintiff's pleas to stop and continued the
assault.  Some of the blows were absorbed by Plaintiff's arm that he
was using as a shield.  Plaintiff grabbed inmate Perez by his one hand
and his throat in an effort to stop the assault, but blood from an
open wound to Plaintiff's head was running into Plaintiff's eyes and
blinding him.  During the assault, and at approximately   4:05 p.m.,
the two officers who were doing the institutional count, saw what was
happening in the cell.  They unlocked the cell door and ordered both
inmates to lay face down on the floor and both Plaintiff and Perez
complied.  Both inmates were secured and removed from the Unit.

39.) Plaintiff was immediately rushed to the emergency room in
an outside hospital due to severe bleeding.  Plaintiff remained at
the outside hospital overnight   , receiving treatment for wounds to
his head and arms.  The worst head wound was just inches away from

Plaintiff's temple area.  Plaintiff suffered two lacerations to his head, one requiring stitches, a concussion, contusions to both arms, and other numerous cuts and bruises.  The extent of Plaintiff's injuries are recorded in Plaintiff's medical records which are also included as Exhibits to this Complaint.

40.) En route to the outside hospital, the EMTs in the ambulance asked Plaintiff what had happened.  Before Plaintiff could answer, a BOP Officer answered, "He doesn't remember."  Such an answer did more than confuse Plaintiff a little.  Plaintiff believes the Officer who answered the EMTs was Lieutenant Reedy, the Property Officer from the SHU.

41.) Plaintiff was brought back to the prison the next after-noon and placed in SHU (Special Housing Unit, or the "Hole") for the next two months while an investigation was conducted.  At the conclusion of the investigation, it was determined that Plaintiff was not the aggressor, did not initiate the incident, and was found not guilty of violating any prison regulations.  The incident report Plaintiff had initially received was expunged.  Plaintiff was then released from SHU and placed back into the general population of the prison.  Case Manager Potoro erroneously stated in the original incident report that he witnessed both inmates, Plaintiff and inmate Perez throwing punches, which was not true.

42.) While Plaintiff was housed in SHU, Correctional staff and staff from the Medical Services Department treated Plaintiff terribly.

-15-

They treated Plaintiff as less than human, laughing at his requests, struggles, dizziness, poor English, and pain and suffering.  Plaintiff experienced dizziness day and night (and still does today).  While in the Special Housing Unit, Plaintiff asked J. Hemphill, PA, for some pain meds and his blood pressure meds.  PA, Hemphill told Plaintiff that he would be back with the requested meds, but never returned.

43.) J. Freynik, EMT, after witnessing Plaintiff's suffering, did nothing to help, but rather laughed at Plaintiff and his distress.  Also, Health Services Department staff member S. Driebelbies, RN, while conducting an exam of Plaintiff, told the Officer who brought Plaintiff to the exam room in a wheelchair, to "...bring it in here and put it over there," and was very nasty toward Plaintiff during the exam.  RN Driebelbies acted like she didn't like Plaintiff and like she didn't want to be there.  She acted very heartless.

44.) After Plaintiff was placed back in general population, he repeatedly signed up for sick-call, because he was suffering from constant dizziness and experiencing regular falls.  On one occasion, he was seen by PA Zalno, who was very indifferent to Plaintiff's complaints and acted very rudely throughout the treatment session.  PA Zalno's whole demeanor seemed meant to discourage Plaintiff from returning to sick-call.

45.) The PA Plaintiff is assigned to, Micki Powanda, has treated Plaintiff with disrespect, complete and deliberate indifference to all requests made by Plaintiff.  She has threatened to lock Plaintiff

up in SHU on numerous occasions.  When (and sometimes before) Plaintiff presents any physical problem he needs help with, PA Powanda screams at him and tells him to get out.  Going to her to seek help with any of the lasting effects from the assault is like submitting to torture. Plaintiff has explained to PA Powanda on many, many occasions that the constant dizziness has caused him to fall many times and that the dizziness is a direct result of the assault of May 18, 2017. Plaintiff has also complained of severe headaches and clicking in his ears that are also effects from the assault.  Plaintiff has tried to explain to PA Powanda that his short term memory is almost nonexistent since the incident, in fact, Plaintiff exlpained that he forgets appointments that he might have with the Health Services Department, as well as, other Departments  in the prison.  This is evidenced in Plaintiff's Medical Records that are included as Exhibits to this Complaint.

     46.) Defendants J. Potope, HSA, R. Parkyn, AHSA, and Dr. Elizabete Stahl have exhibited dereliction of their duties in failing to properly supervise Health Services Department staff.  The staff appear to run unhampered and untrained.  Many inmates cannot believe the language used by staff members when dealing with inmates.  Plaintiff has tried to complain to these supervisors, but has been brushed off each time.

     47.) The Correctional Officers that were assigned to the SHU Unit during the time period from May 19, 2017 through July 13, 2017 treated Plaintiff with more than deliberate indifference, violating Plaintiff's Constitutional protection against cruel and unusual punishment, violating his Due Process rights, and committing acts of

terror, retaliation, and other inhumane acts.

48.) In particular, Correctional Officers Yost and Baily who worked the first shift in the SHU Unit, would upon witnessing the struggles of Plaintiff (especially after Plaintiff having just fallen, would laugh and make fun of Plaintiff. They would both ignore the pleas for help from Plaintiff and they would deny Plaintiff medications, particularly pain medication. They allowed Plaintiff to suffer for prolonged periods of time needlessly.

49.) Another example is the conduct of Correctional Officers Atkins and Martin who worked the second shift in the SHU Unit during the time in question. They both ignored Plaintiff's pleas for help. They would not offer assistance when seeing that Plaintiff had fallen, and generally treated him with contempt.

50.) And there was Correctional Officers JOHN DOE #1 and JOHN DOE #2, who placed Plaintiff in a cell that only had hot water. When Plaintiff mentioned that there was no cold water (or even semi-cold) water to drink, they just laughed. On one occasion Plaintiff had experienced a fall and pulled himself up to where he could reach the call button and pushed it to summon help. JOHN DOE #1 told Plaintiff that if he pushed the call button again, he would write Plaintiff an incident report. Another time when Plaintiff became extremely thristy, and not wanting to get in any further trouble with either Officer, Plaintiff began knocking on the inside of the cell door, but still got yelled at. Plaintiff reported falling both in the shower and in

the cell and these particular Officers acted as though they hadn't heard anything Plaintiff had said.

## V. Statute Of Limitations.

51.) Pennsylvania's two-year statute of limitations for personal injury actions applies to Plaintiff's Action, See, 42 Pa. Cons. Stat. §5524(2); See also, Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993). The standard rule is a cause of action accrues when the Plaintiff has a complete and present cause of action, that is, when the Plaintiff can file suit and obtain relief. The Constitutional violations committed by the Defendants occurred between sometime in early April, or May, 2017 through the present day, therefore, under Pennsylvania law, Plaintiff's Action is timely.

## VI. Injuries.

52.) Plaintiff sustained the following injuries from the assault that occurred on May 18, 2017 and from the many falls Plaintiff has experienced from the time of the assault until the present day:

(a) a concussion (which appears to have been much worse than medical staff first assumed),

(b) Several lacerations to the head, requiring stitches,

(c) contusions to both arms,

(d) numerous cuts and bruises,

(e) Continuing Blurred vision,

(f) Continuing nausea,

(g) Continuing blood in urine,

(h) Continuing blackouts,

(i) Continuing falls,

(j) Continuing clicking in the ears,

(k) Very bad headaches (Continuing),

(l) Continuing panic attacks,

(m) Continuing dizziness,

(n) PTSD,

(o) Continuing tingling and numbness in the legs and feet,

(p) Continuing loss of balance,

(q) Continuing room spinning,

(r) Loss of short term memory,

(s) Hip injury and numbness from repeated falls.


53.) Plaintiff has been and continues to be denied medical attention when he attends any medical call-outs, or signs up for sick-call.  Nearly every time Plaintiff complains of his injuries, or pain he might be suffering at the moment, medical staff tell him it's nothing and direct him to buy aspirin at the inmate commissary.  It is very discouraging to be treated so badly when asking for help.


54.) The Medical Department's staff, the Medical Department's Supervisor's, and the Correctional Officer's total disregard of the pleas for help from Plaintiff amounted to a wanton disregard, that is sufficiently evidenced by denial, delay, or interference with prescribed or apparent medical need or care, and deliberate indifference to a substantial risk of serious harm or to a medical need and

violated the Eighth Amendment of the U.S. Constitution's prohibition against cruel and unusual punishment.

## VII. Relief Sought.

55.) As a proximate result of the Defendant's tortious acts, Plaintiff suffered irreparable harm for which there is no adequate remedy at law.  Plaintiff prays this Honorable Court would find that Plaintiff is entitled to the following award:

(1) Actual damages to compensate for lost future income -

$3,000,000.00

(2) Mental suffering, psychological harm, including PTSD -

$1,500,000.00

(3) Punitive Damages -

$1,500,000.00

_____

$6,000,000.00

56.) The basis for the amount of damages sought by Plaintiff is as follows: (1) Plaintiff will no longer be able to pursue his gainful employment in the Commercial Truck Driving business, and as a result, will no longer be able to provide for his family in the same manner; (2) Plaintiff has endured extreme and lasting mental suffering and psychological harm, including ongoing PTSD; and (3) Plaintiff seeks punitive damages, because the wrongful acts were done intentionally and maliciously.

57.) The defendants have an opportunity to resolve this matter

short of trial by responding positively to Plaintiff with a settle-
ment offer.

VII. Previous Lawsuits.

58.) Plaintiff has not previously filed any other suits in State
or Federal Court dealing with the same facts involved in this Action.
Further, Plaintiff has not filed any other lawsuits in State or
Federal Court otherwise relating to his imprisonment.

I declare under penalty of perjury that the foregoing is true and
correct.

Signed this    th day of *June 1*  2018

V. Sonin
_____

Vladimir Sonin, pro se

13615-089

FCI Allenwood Medium

P. O. Box 2000

White Deer, Pennsylvania 17887

-22-