**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VLADIMOR SONIN,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:18-1221** |
| **v** | **:** | |
| | | **(JUDGE MANNION)** |
| **J. POTOPE, et al.,** | **:** | |
| **Defendants** | **:** | |

**MEMORANDUM**

I. **Background**

Plaintiff,  Vladimor Sonin, an inmate formerly housed[1] in the Allenwood

Federal Correctional Institution, White Deer, Pennsylvania, filed the above

captioned federal civil rights action pursuant to 28 U.S.C. §1331. (Doc. 1).

Plaintiff alleges that he sustained injuries from an assault that occurred

on May 18, 2017, and "from the many falls Plaintiff has experienced from the

time of the assault until present day." Id. He claims that he "has and

continues to be denied medical attention when he attends any medical call-

outs or signs up for sick-call." Id. Specifically, he states that "nearly every

time Plaintiff complains of his injuries, or pain he might be suffering at the

---

[1] Plaintiff was released from custody on August 6, 2020 and currently resides at 2930 N. 26th Street, Milwaukee, Wisconsin, 53206.

moment, medical staff tell him it's nothing and direct him to buy aspirin at the inmate commissary." Id.

He filed the instant action, seeking compensatory and punitive damages for "the Medical Department's staff, the Medical Department's Supervisor's, and the Correctional Officer's total disregard of the pleas for help from Plaintiff," which Plaintiff claims "amounted to a wanton disregard, that is sufficiently evidenced by denial, delay, or interference with prescribed or apparent medical need or care, and deliberate indifference to a substantial risk of serious harm or to a medical need in violation of the Eighth amendment." Id.

On May 3, 2019, Sonin filed a "First Amended Complaint," which he characterizes as an addendum to his original complaint. (Doc. 27). In this document, Plaintiff seeks to add a November 25, 2018 assault to his action. Id. Specifically, Plaintiff states that "on November 25, 2018, while incarcerated in the SHU in cell #210, FCI-Allenwood-Medium, during lunchtime, inmate Shehadeh was on the top bunk feigning sleep, Plaintiff moved from table to his bottom bunk and unprovoked, unexpected, and without warning inmate Shehadeh kicked Plaintiff with the heel of his foot directly in the face, breaking Plaintiff's nose and causing massive bleeding, causing permanent disfigurement to the Plaintiff's face." Id.

Presently before the Court is Defendants' motion to dismiss and for summary judgment. (Doc. 44). Defendants argue, *inter alia*, that Plaintiff failed to exhaust his administrative remedies with respect to his assault claims and any medical claims claim related thereto. Id. The motion is fully briefed and is ripe for disposition.  For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II.    Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the

4

existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused

from complying with court orders and the local rules of court"); Thomas v.

Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006)

(*pro se* parties must follow the Federal Rules of Civil Procedure).

### III.    Statement of Facts[2]

The Bureau of Prisons (BOP) has an administrative remedy procedure

with respect to inmate complaints, namely 28 C.F.R. §542.10, *et seq.*

The BOP's Administrative Remedy Program allows an inmate to seek

formal review of an issue relating to any aspect of his confinement. 28 C.F.R.

§542.10(a). Before seeking formal review, an inmate must first attempt to

resolve the matter informally by presenting his complaint to staff on an

Informal Resolution Attempt form commonly referred to as a BP-8. 28 C.F.R.

---

[2] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 45) will be deemed admitted.

§542.13(a). If informal resolution is unsuccessful, the inmate may then seek relief from the warden with the submission of a Request for Administrative Remedy, commonly referred to as a BP-9. 28 C.F.R. §542.14. The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the event which is the subject of the remedy. Id.

If the inmate is not satisfied with the warden's response, he has twenty days from the date of the response, to file a BP-10, Regional Administrative Remedy Appeal, with the Regional Director. 28 C.F.R. §542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then file, within thirty days of the response, a Central Office Administrative Remedy Appeal or BP-11 with the BOP's General Counsel. Id. An inmate's appeal to the Central Office is the final administrative level of appeal in the BOP. 28 C.F.R. §542.14(b).

Plaintiff, Vladimir Sonin, was a federal inmate serving a thirty-four month sentence for a bank fraud conviction he received on March 31, 2016, in the United States District Court for the Eastern District of Wisconsin. (Doc. 45-1 at 7, Sentence Monitoring Computation Data). Sonin was confined at the Federal Correctional Institution Allenwood  (FCI-Allenwood) from March 27, 2017, through January 7, 2019. (Doc. 45-1 at 10, Inmate History Quarters).

The BOP maintains computerized indexes of inmate administrative remedy submissions to verify whether an inmate has exhausted administrative remedy submissions on a particular issue. A review of Sonin's administrative remedies filed throughout his incarceration with the BOP, reveal that Sonin submitted a total of nine administrative remedies. (Doc. 52-1 at 16-17, Administrative Remedy Generalized Retrieval).

Sonin's first three administrative remedies, Remedy No. 885166-R1, 887627-F1,and 887627-R1, pre-date both Plaintiff's May 18, 2017 and November 25, 2018 assaults, having been filed on December 6, 2016, January 4, 2017, and February 13, 2017, respectively. (Doc. 45-1 Administrative Remedy Generalized Retrieval at 13-15). Plaintiff's other two administrative remedies, Remedy No. 959080-R1, filed November 5, 2018 and Remedy No. 959080-R2, filed November 16, 2018, were filed more than a year after Plaintiff's May 18, 2017 assault and before Plaintiff's November 25, 2018 assault. Id. Both of these administrative remedies challenge a disciplinary hearing with respect to Incident Report No. 3173607, which Plaintiff was issued on September 25, 2018. (Doc. 52-1 at 16-17). Plaintiff's four remaining administrative remedies, Remedy Nos. 972288-F1, 972288-R1, 972288-A1, 972288-A2, were all filed in 2019, while Plaintiff was housed at the USP-Terre Haute, and concern Plaintiff's custody classification. Id.

There is, however, no record to indicate that Sonin ever exhausted, or attempted to exhaust, any administrative remedies regarding his May 18, 2017 assault and subsequent medical treatment, or his November 25, 2018 assault. Id.

## IV.  Discussion

### A.  Exhaustion

Defendants seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake,—— U.S. ——, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust-irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337 (2000).(explaining that "[t]he mandatory 'shall' ... normally

creates an obligation impervious to judicial discretion").'" Id. at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. Ross v. Blake, ––– U.S. –––, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This applies when the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' Id. at 1859-60." Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from

subsequently litigating claims in federal court. See Spruill, 372 F.3d 218.

Notably, prison administration must also comply with the demands of the

system. "[A]s soon as a prison fails to respond to a properly submitted

grievance or appeal within the time limits prescribed by its own policies, it

has made its administrative remedies unavailable and the prisoner has fully

discharged the PLRA's exhaustion requirement." Shifflett, 934 F.3d at 365.

Plaintiff's complaint challenges a May 18, 2017 assault and a

November 25, 2018 assault and alleged inadequate medical treatment

received subsequent to the assaults. (Doc. 1).

The record before this Court reveals that Plaintiff filed nine

administrative remedies while confined in BOP custody. However, despite

having filed nine administrative remedies on various issues, between

December 6, 2016 and November 15, 2019, Sonin has not filed any remedy

pertaining to the claims raised in the instant action. In fact, there is no record

to indicate that Sonin ever exhausted, or attempted to exhaust, any

administrative remedies regarding any assault, or medical treatment.

Thus, it is evident that Plaintiff failed to follow the procedural

requirements of the BOP. Failure to employ the system of administrative

remedies, even if the administrative process would be inadequate to grant

full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372

F.3d 218, 222-26 (3d Cir. 2004). Sonin's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

## V.    Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment with respect to Plaintiff's failure to exhaust his claims regarding his May 18, 2017 and November 25, 2018 assault, and subsequent medical treatment. An appropriate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 3, 2021**

18-1221-01.